IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

CARRIE FINCH, Individually and
as Executor of the Estate of
Juvay Finch,

    Plaintiff,

v.

OWNERS INSURANCE COMPANY,

    Defendant.

CV 616-169

**O R D E R**

Before the Court is Defendant's motion to exclude the testimony of Plaintiff's expert Stuart Gregory. (Doc. 84.) Defendant challenges the qualifications, reliability, and helpfulness of Mr. Gregory's testimony, pursuant to Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993). Defendant also argues Mr. Gregory should be prevented from relying on certain photographs because Plaintiff never disclosed that evidence in the expert witness report. For the reasons set forth below, Defendant's motion to exclude is **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

Prior to making this motion, Defendant moved for partial summary judgment and to exclude three expert witnesses. (See Docs. 27, 28.) The Court's Order of December 6, 2017, addressed those motions and provided the case's relevant factual background. (Doc. 65.) Those facts are now incorporated herein by reference. Nevertheless, a brief recitation of the relevant timeline is appropriate.

In January 2016, it was discovered that Plaintiff's roof had been damaged by a hailstorm that occurred in June 2015. Plaintiff informed her insurer, Defendant Owners Insurance Company, which sent its claims adjuster, John Dukes, to investigate. Mr. Dukes inspected the roof and determined that Plaintiff's insurance policy covered the cost of a roof replacement. Between April and May 2016, a new roof was installed on Plaintiff's house. Two months prior to the replacement, however, Plaintiff discovered water intrusion and mold damage inside the house. When Plaintiff filed a new insurance claim for that damage, Defendant sent engineer Ron Powers to inspect the home. Mr. Powers concluded the water damage was attributable to surface water, improper construction, and inadequate maintenance, none of which were covered perils under the insurance policy. At bottom, this case turns on whether the hail damage to the roof caused the water intrusion and resulting damage. This is

the issue about which Plaintiff's expert, Stuart Gregory, will testify.

Defendant's current motion is the second attempt to exclude the testimony of Mr. Gregory. (See Doc. 28.) The Court denied Defendant's prior motion to exclude. (Order of Dec. 6, 2017, Doc. 65, at 5-10.) In its Order, the Court noted that Plaintiff violated Federal Rule of Civil Procedure 26(a)(2)(B)'s disclosure and supplementation requirements, but there was no evidence to suggest it was done in bad faith. (Id. at 8.) As such, exclusion was too harsh a penalty, particularly because "Mr. Gregory's testimony is the only evidence Plaintiff has to demonstrate the source of water damage, which is an essential part of Plaintiff's complaint." (Id. at 8-9.) Instead, the Court reopened discovery and allowed Defendant to depose Mr. Gregory. (Id. at 9.) The Court also denied Defendant's request to exclude Mr. Gregory on the basis of unreliable methods (Id. at 10), noting again that such a decision was premature without the benefit of a deposition. (Id.) Subsequently, Defendant deposed Mr. Gregory and now renews its motion to exclude his testimony. (Doc. 84.)

## II. LEGAL STANDARD

Federal Rule of Evidence 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's

3

scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods of the facts of the case.

"As the Supreme Court recognized in <u>Daubert v. Merrell Dow Pharms., Inc.</u>, Rule 702 plainly contemplates that the district court will serve as a gatekeeper to the admission of scientific testimony." <u>Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.</u>, 326 F.3d 1333, 1340 (11th Cir. 2003). "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." <u>Allison v. McGhan Med. Corp.</u>, 184 F.3d 1300, 1306 (11th Cir. 1999).

Courts engage in a three-part inquiry to determine the admissibility of expert testimony under Rule 702. <u>Quiet Tech.</u>, 326 F.3d at 1340. Specifically, the court must consider whether:

> (1) The expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in <u>Daubert</u>; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

<u>Id.</u> at 1340-41.

First, an expert may be qualified to testify due to his knowledge, skill, experience, training, or education. <u>Trilink Saw</u>

4

Chain, LLC v. Blount, Inc., 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008). A witness's qualifications must correspond to the subject matter of his proffered testimony. See Jones v. Lincoln Elec. Co., 188 F.3d 709, 723 (7th Cir. 1999).

Second, the expert's opinions must be reliable. In Daubert, the Supreme Court directed district courts faced with the proffer of expert testimony to conduct "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. at 592-93. There are four factors that courts should consider: (1) whether the theory or technique can be tested, (2) whether it has been subject to peer review, (3) whether the technique has a known or potential rate of error, and (4) whether the theory has attained general acceptance in the relevant community. Id. at 593-94. "These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004). Thus, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

5

Regardless of the specific factors considered, "[p]roposed testimony must be supported by appropriate validation — i.e., 'good grounds,' based on what is known." Daubert, 509 U.S. at 590. In most cases, "[t]he expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." FED. R. EVID. 702, advisory committee's notes (2000 amendment). "Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough" to carry the proponent's burden. Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla., 402 F.3d 1092, 1113 (11th Cir. 2005). Thus, neither an expert's qualifications and experience alone nor his unexplained assurance that his or her opinions rely on accepted principles is sufficient. McClain v. Metabolife Int'l, Inc., 401 F.3d 1233, 1244 (11th Cir. 2005); Frazier, 387 F.3d at 1261. Moreover, when analyzing a witness's reliability, courts must be careful to focus on the expert's principles and methodology rather than the scientific conclusions that they generate. Daubert, 509 U.S. at 595.

Third, expert testimony must assist the trier of fact to decide a fact in issue. Thus, the testimony must concern matters beyond the understanding of the average lay person and logically advance a material aspect of the proponent's case. Daubert, 509 U.S. at 591; Frazier, 387 F.3d at 1262. The Supreme Court has

6

described this test as one of "fit." Daubert, 509 U.S. at 591. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63.

### III. DISCUSSION

#### A. Qualifications

Defendant argues Mr. Gregory has neither the education or experience to render an opinion as to whether hail damage caused the water intrusion. It claims the majority of cases Mr. Gregory previously served in as an expert involved construction defects, not damage from severe weather events. The Court is not persuaded.

Mr. Gregory has worked in the construction business since 1981 and has held numerous roles in that time including general contractor, facilities manager, consultant, and sub-contractor doing residential pool installation, roof installation, framing, and siding. (Dep. of Stuart Gregory ("Gregory Dep."), Doc. 87-1, at 7-10, 28.) He is a certified building contractor in Florida and has been involved in several residential and commercial building projects. (Id. at 9-19 (describing multiple projects).) Mr. Gregory is also certified as an External Installation Finishing Systems inspector through the American Walls and Ceilings Institute. (Id. at 25.) Additionally, for the past five years,

Mr. Gregory's construction company has worked exclusively on projects to repair water intrusion damage caused by both construction defects and weather damage. (Id. at 159.) Suffice it to say, Mr. Gregory's experience working in the construction industry is extensive.

Since entering construction litigation in 2005, Mr. Gregory served as an expert witness in 115 cases, of which forty-eight involved water intrusion through a roof or building envelope. (Id. at 29.) At least five of those cases involved water intrusion caused by storm damage. (Id. at 34-43 (describing details of each case).) While Defendant correctly points out that none of these cases involved hail damage, his experience with storm damaged roofs is still relevant to his qualifications to render an opinion in this case. Based on Mr. Gregory's certifications, residential and commercial construction experience, and history as an expert witness in construction defect, water intrusion, and similar cases, the Court finds he is qualified to render an opinion in this case.

## B. Reliability

When evaluating an expert's testimony under the Daubert factors, courts must remain mindful that "Daubert does not require certainty; it requires only reliability." Hendrix ex rel. G.P. v. Evenflo Co., 609 F.3d 1183, 1198 n.10 (11th Cir. 2010). The focus

of the reliability inquiry "must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 596.

On May 5 and 6, 2017, Mr. Gregory conducted an on-site investigation at Plaintiff's house that included a deconstruction and evaluation of the building envelope and interior damages. (Gregory Dep., at 83-84.) The deconstruction involved removing wall paneling, insulation, and siding to view water damage in the interior of the house, the crawl space, and a "masonry wall." (Id. at 84-90.) During that investigation, Mr. Gregory applied the E2128 building envelope standard for water infiltration promulgated by ASTM International.[1] (Id. at 150-51, 158-59 (explaining standard).) Prior to the May inspection, Mr. Gregory visited the house with Plaintiff's son, Darrell Finch, who provided the timeline of events and background information. (Id. at 91, 100-01.) Mr. Gregory also reviewed the report prepared by Ron Powers, Defendant's engineer who also inspected the premises. (Id. at 91.)

There were, however, some limitations on the observations Mr. Gregory could make during his inspection. Most glaring among them is Mr. Gregory's inability to inspect the damaged roof prior to

---

[1] ASTM International is a global organization that uses technical experts to develop over 12,500 standards for construction, manufacturing, consumer products, the environment, and more. See Helping Our World Work Better, ATSM INTERNATIONAL (May 2018), https://www.astm.org/GLOBAL/images/Helping-Our-World-EN-2018.pdf.

9

its replacement in 2016. (Id. at 138.) Further, he did not review any photographs of the roof taken by Mr. Dukes or the roofing company prior to or during the replacement.[2] (Id.) Accordingly, the basis of Mr. Gregory's conclusion that hail damaged Plaintiff's roof severely enough to justify replacement is the simple fact that Defendant paid for the roof to be replaced. (Id. at 110, 141.)

Considering the relevant factors, the Court cannot say that Mr. Gregory's testimony is unreliable. During his two-day inspection Mr. Gregory applied the relevant ASTM methodology and performed an extensive deconstruction of Plaintiff's house to observe the water damage. Further, it was reasonable for Mr. Gregory to assume certain facts that he did not have first-hand knowledge of, such as a hail storm damaged Plaintiff's roof and the damage was extensive enough to justify Defendant paying to replace the roof.[3] See Williams v. Illinois, 567 U.S. 50, 57 (2012) ("Under settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true.").

---

[2] At deposition, Mr. Gregory revealed that the day before his deposition Plaintiff's counsel shared some photos Mr. Dukes took of the damaged roof. (See Gregory Dep., at 66, 80.) Defendant challenges Mr. Gregory's ability to rely on these photos because of Plaintiff's failure to disclose them in a supplemental witness report. That issue is discussed in Section D, infra.

[3] Mr. Gregory's reliance on this fact to support his conclusions about the extent of hail damage, while seemingly obvious, is perfectly valid. Defendant would not pay for a roof replacement without adequate proof of damage, as evidenced by the very existence of this lawsuit.

Defendant argues Mr. Gregory's testimony is unreliable because he used Darrell Finch's representation about hail damage, water infiltration, and the timeline of events to render his opinion. In Defendant's view, because Darrell Finch owns a one-fifth interest in the property and is Plaintiff's son, he is too biased to rely on for information. Expert witnesses, however, are "permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." Daubert, 509 U.S. at 592. Experts may also rely on hearsay testimony if it is the type of evidence reasonably relied upon by experts in that field. FED. R. EVID. 703; United States v. Floyd, 281 F.3d 1346, 1349 (11th Cir. 2002). The basic facts of the case and a timeline of events are evidence that any expert would necessarily need to render an opinion. Mr. Gregory's testimony is no exception.

Furthermore, Mr. Gregory relied on other sources of information besides Darrell Finch to determine the background of events. He reviewed the report prepared by Defendant's engineer Ron Powers. (Ex. 3 to Gregory Dep., Doc. 88-4, at 1.) He watched videos of water intrusion occurring, admittedly filmed by Darrell Finch, that showed water intrusion in the laundry room, kitchen, bathroom, and living room. (Gregory Dep., at 97.) Finally, Mr. Gregory considered the fact that Defendant paid to replace Plaintiff's roof. Simply put, Mr. Gregory's use of Darrell Finch's representations does not render his opinion unreliable.

Defendant also maintains that Mr. Gregory's inability to inspect the damaged roof renders his opinion unreliable. While it is true that he never inspected the damaged roof and could not perform any tests during his investigation to determine the extent of damage to the roof, this criticism is more appropriately raised during cross-examination. See Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). "Indeed, 'in most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility.'" Quiet Tech., 326 F.3d at 1345 (quoting Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1188 (9th Cir. 2002)). In short, Mr. Gregory's inability to inspect the damaged roof does not render his opinion inadmissible, it simply provides Defendant a potential line of attack on cross-examination.

## C. Helpfulness

Plaintiff offers the testimony of Mr. Gregory to support her theory that hail damage caused the water infiltration and resulting damage, the key issue in this case. Mr. Gregory's expert witness reports provide that his testimony renders an opinion on the causation of the water intrusion at Plaintiff's house. His initial

expert witness report states: "The witness will express an opinion as to causation of the damage to the Plaintiff['s] residence. . . . Consultant will render opinions regarding water intrusion causation." (Ex. 2 to Gregory Dep., Doc. 88-3, at 1.) In his written investigation summary, Mr. Gregory opined, "CMCG has determined that the roof damaged by a severe weather event that Auto-Owners identified to have occurred June 3, 2015, caused water intrusion the entire length of the house . . . . The visible evidence of pervasive water intrusion on the interior finishes clearly represent that after the roof was damaged by hail, water leaked into the third floor, migrating down into the second floor and eventually passed through into the basement." (Ex. 3 to Gregory Dep., at 7.)

Plaintiff, in her response brief, characterized the purpose of Mr. Gregory's testimony somewhat differently. She stated, "Gregory was retained by Plaintiff to determine the following: the source of the water intrusion; the pathways where water entered the building envelope; the resultant damage to the interior of the house; and locations of mold and fungal development. . . . Specifically, he was hired to identify and track moisture intrusion from the roof to the ground floor of the home." (Pl.'s Resp. to Def.'s Renewed Mot. to Exclude Expert Witness, Doc. 85, at 3-4 (internal quotation omitted).) Thus, Plaintiff contends, "[w]hether such intrusion occurred because of

13

severe weather, construction defects, or some other reason is irrelevant to his opinion." (Id. at 4.) Plaintiff later reiterated that the purpose of Mr. Gregory's testimony "was not to ascertain the cause of the failure of the Finch's roof." (Id. at 7.)

Thus, Plaintiff's description of Mr. Gregory's testimony appears to be at odds with the expert witness report and Mr. Gregory's own conclusions. While it is true that Gregory identified the source of the water, its pathways through the house, and the resulting damage, those observations are not the sole purpose of his testimony. Rather, those are part of *the basis* for Mr. Gregory's conclusion that hail damage caused the water intrusion. (See Gregory Dep., at 112.) Therefore, despite Plaintiff's puzzling insistence that the cause of the water intrusion "is irrelevant to his opinion,"[4] the Court will focus on the opinion actually rendered by Mr. Gregory. After all, his testimony is the subject of this motion and is what the jury will hear at trial.

Of course, the discrepancies between Mr. Gregory's opinion and Plaintiff's characterization of his opinion may simply be a matter of semantics. Determining the source of water intrusion

---

[4] As Defendant points out, if Mr. Gregory's testimony is not to determine the cause of water intrusion, then Plaintiff cannot prove her case. In fact, the Court previously determined that Mr. Gregory's testimony is the only evidence Plaintiff has to support the causation element of her claim. (Order of Dec. 6, 2017, at 8-9.)

14

could be considered a determination of causation of the water intrusion, particularly because hail damaging the roof was a fact assumed by Mr. Gregory. During his deposition, Mr. Gregory testified that the top to bottom pathway of the water in the house supports the conclusion that hail damaged the roof enough to allow water to penetrate the interior. (Id.) Thus, the conclusion that the water intrusion occurred at the roof of the house combined with the assumptions that hail damaged the roof and no water intrusion occurred since the roof was replaced[5] can be considered an opinion on the causation of water intrusion.

As the Court previously recognized, Mr. Gregory's opinion is crucial to Plaintiff's burden to prove causation. This case essentially boils down to whether hail damage caused the water intrusion. Because Mr. Gregory's testimony goes to the heart of that issue, it is helpful to the fact finder and "fits" this case. Accordingly, the Court concludes Mr. Gregory's testimony is admissible under Federal Rule of Evidence 702 and Daubert.

### D. Disclosure of Photographs

Defendant argues that Mr. Gregory should be precluded from relying on certain photographs discussed during his deposition

---

[5] Mr. Gregory included this fact in the summary of his investigation. (Ex. 3 to Gregory Dep., at 3.)

because Plaintiff did not disclose those photos in the expert witness report.

The photos at issue were taken by Defendant's claims adjuster John Dukes and apparently show portions of Plaintiff's roof with hail damage. (Gregory Dep., at 66.) Defendant provided those photos to Plaintiff during discovery and before Plaintiff disclosed Mr. Gregory's written report on June 27, 2017. At Mr. Gregory's deposition six months later, defense counsel asked him whether he reviewed any photos and Mr. Gregory revealed that Plaintiff's counsel had shared the photos with him the day before the deposition. (Id. at 65-66, 80.) To date, Plaintiff has not supplemented Mr. Gregory's expert witness report or indicated which specific photos Mr. Gregory viewed.

The photos were discussed only in the abstract because the parties did not use physical copies at the deposition. Mr. Gregory indicated these photos show hail damage to the roof but are not clear enough to conclusively determine whether hail penetrated the roof and allowed water in. (Id. at 66-67.) He did, however, note that the photos show two portions of the roof directly above areas inside the house with visible water damage. (Id. at 66, 151-52.) Thus, as Plaintiff admits, Mr. Gregory stated the photos support his opinion that hail damage caused water intrusion. (See Pl.'s Resp. to Def.'s Renewed Mot. to Exclude Expert Witness, at 9-10

("As it happened, Gregory responded that the Defendant's photographs to [sic] supported his opinion.").) Nevertheless, Plaintiff contends that no duty to supplement has been triggered because Mr. Gregory did not rely on the photos to support his original opinion. (Id. at 9.)

Under Federal Rule of Civil Procedure 26(a)(2)(B), an expert witness report must contain, among other things, "(i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them." Further, a party has a continuing duty to supplement the report, which "extends both to information included in the report and *to information given during the expert's deposition.*" FED. R. CIV. P. 26(e)(2) (emphasis added).

When a party fails to disclose information under Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1); see also Mitchell v. Ford, 318 F. App'x 821, 824 (11th Cir. 2009) (upholding decision to strike basis of support for expert's opinion when offering party failed to disclose them). The burden to show the failure to disclose was substantially justified or harmless rests on the nondisclosing party. Mitchell, 318 F. App'x at 824. Further, to determine

whether a Rule 26 violation is harmless under Rule 37, courts apply four factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; [and] (4) the importance of the evidence."[6] Abdulla v. Klosinski, 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012).

Plaintiff has not demonstrated that the failure to disclose the photos was harmless. Mr. Gregory was unable to inspect the roof before it was replaced. Thus, any photographs of the hail damaged roof would necessarily be helpful in rendering an opinion on water intrusion causation. Mr. Gregory's deposition testimony admits as much. (Gregory Dep., at 66, 151-54.) The failure to disclose the photos as a basis for his opinion prejudiced Defendant at deposition because of the inability to prepare questions regarding Mr. Gregory's thoughts on the photos. This was particularly prejudicial in light of the potential importance of such photos to Mr. Gregory's opinion. Further, the surprise could not be adequately cured because Mr. Gregory and defense counsel only were able to discuss the photos in abstract terms, without the benefit of physical copies.

Plaintiff contends the duty to supplement was never triggered because Mr. Gregory did not use the photos in rendering his initial

---

[6] There is also a fifth factor which considers the nondisclosing party's explanation for the failure to disclose. This factor is inapplicable here because Plaintiff argues there was no such failure.

18

opinion. The duty to supplement, however, extends "to information given during the expert's deposition." FED. R. CIV. P. 26(e)(2). Similarly, the fact that the photos were originally disclosed by Defendant in discovery does not obviate the need for Plaintiff to include that Mr. Gregory used the photos in forming his opinion. See FED. R. CIV. P. 26(a)(2)(B)(iii). The purpose of Rule 26's disclosure requirements is to provide notice as to what the expert will testify. Silverstein v. Proctor & Gamble Mfg. Co., 700 F. Supp. 2d 1312, 1320 (S.D. Ga. 2009) (citing Ciomber v. Coop. Plus, Inc., 527 F.3d 635, 642 (7th Cir. 2008)). "Notice permits opposing counsel the opportunity to prepare adequate and effective cross-examination, and ensures that there will be no unfair surprise." Id. Without notice that the photos would be used to support Mr. Gregory's opinion, Defendant was deprived of the opportunity to adequately prepare for Mr. Gregory's deposition.

In sum, Plaintiff was required to supplement the expert witness report with the photos Mr. Gregory used to support his opinion. Because Plaintiff failed to do so, the Court imposes a sanction under Rule 37(c)(1). Mr. Gregory is hereby precluded from using the photos taken by John Dukes and discussed at the deposition in his testimony and from relying on them to form his opinion.[7]

---

[7] In imposing this sanction, the Court is mindful of Plaintiff's prior failure to comply with Rule 26(a)(2)(B) and the expert report deadlines, as discussed in the Court's Order of Dec. 6, 2017. See Thibeault v. Square D Co., 960 F.2d

## IV. CONCLUSION

The Court finds that Plaintiff's causation expert Stuart Gregory is qualified to render an opinion, his methodology is reliable, and his testimony will be helpful to the fact finder. The Court will, however, prohibit Mr. Gregory's reliance on certain photographs discussed during his deposition because Plaintiff failed to disclose those photos as a basis for his opinion in accordance with Rule 26. Accordingly, Defendant's motion to exclude (Doc. 84) is **GRANTED IN PART AND DENIED IN PART.**

**ORDER ENTERED** at Augusta, Georgia, this 4th day of February, 2019.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

239, 246 (1st Cir. 1992) (past misconduct of counsel relevant to determining sanction under Rule 37(c)(1)).